IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CYNTHIA D. HARP,                )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No. CIV-10-209-FHS
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

### REPORT AND RECOMMENDATION

Plaintiff Cynthia D. Harp (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 27, 1976 and was 31 years old at the time of the ALJ's decision. Claimant completed her education through the eighth grade. Claimant has worked in the past as a fast food worker, housekeeper, production assembly worker, casino

floor worker, and assistant manager of a fast food outlet. Claimant alleges an inability to work beginning March 7, 2006 due to limitations resulting from back problems, depression, and high blood pressure.

### Procedural History

On March 9, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 20, 2007, an administrative hearing was held before ALJ Deborah L. Rose in Tulsa, Oklahoma. On May 8, 2008, the ALJ issued an unfavorable decision on Claimant's application. On May 14, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with some limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) posing hypothetical questions to the vocational expert which do not accurately reflect Claimant's limitations; (2) reaching an erroneous RFC determination; and (3) failing to engage in a proper credibility analysis. Claimant also alleges the Appeals Council improperly closed the record and should have considered additional evidence submitted to it.

## Hypothetical Questioning of the Vocational Expert

In her decision, the ALJ found Claimant suffers from the severe impairments of status post healed compression fracture of the thoracic spine, degenerative disc disease, Major Depressive Disorder, and PTSD. (Tr. 48). She concluded Claimant retained the RFC to perform light work except that she must have a sit/stand at will option. Claimant was also found to be limited to one or two step procedures that could be learned in less than 30 days and have only occasional contact with the general public. (Tr. 50).

Claimant first contends the ALJ posed a flawed hypothetical question to the vocational expert ("VE") who testified in this case because it did not properly represent the restrictions on Claimant to alternate sit and stand. While Claimant accurately represents the testimony between the ALJ and the VE at the hearing, she does

not include the preliminary question which laid the predicate for the questioning that followed. The questioning began as follows:

> ALJ: All right. Let me ask you a hypothetical question. Assuming an individual who is 31-years of age, has an eighth grade education and the past relevant work history you've just described, it that individual were limited to light work, as that's defined in the regulations, such that the individual could lift or carry up to 10 pounds frequently, up to 20 pounds occasionally, could stand or walk approximately six hours a day, could sit approximately six hours a day, **if that individual also needed to alternate sitting and standing, at will**, would that individual be able to perform any of the Claimant's past relevant work?
>
> VE: No, Your Honor.

(Tr. 33).

The questioning proceeded, referring to the "sit/stand option" in all the subsequent questioning. Claimant contends the ALJ should have included the frequency of the need to alternate between sitting and standing in both the questioning of the VE and the RFC. The use of the term "at will" unequivocally translates into as frequently as needed by the worker in the hypothetical.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational

expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The questioning by the ALJ adequately and accurately reflected Claimant's limitations on alternating sitting and standing.

### RFC Determination

Claimant challenges whether the ALJ's RFC determination accurately reflected the totality of Claimant's mental and physical impairments. On January 14, 2008, Claimant was evaluated by Dr. Robert L. Spray, Jr. to gauge her mental status and adaptive functioning. Dr. Spray diagnosed Claimant at Axis I: Major Depression, recurrent, PTSD, Psychological Factors Affecting Chronic Pain, Rule Out Pain Disorder, and Polysubstance Abuse, in long-ter remission; Axis II: No diagnosis. (Tr. 641).

On January 22, 2008, Dr. Spray also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on Claimant. He determined Claimant suffered from moderate restrictions in the ability to understand and remember complex instructions, ability to carry out complex instructions, ability to

7

make judgments on complex work-related decisions, ability to interact appropriately with supervisors and co-workers. He also found Claimant had marked limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 645-46). Marked limitations were also noted in Claimant's ability to complete a workday or workweek without psychologically based symptoms interfering with job performance. (Tr. 646).

In her decision, the ALJ gave "little weight" to the DDS opinion that Claimant's mental impairment was not severe. Instead, the ALJ relied upon Dr. Spray's consultative evaluation to find Claimant's impairments were severe - particularly her Major Depressive Disorder and PTSD. (Tr. 52).

The problem with the ALJ's RFC determination lies not in rejecting Dr. Spray's opinion and analysis but in relying upon it and not including all of the limitations Dr. Spray found in the final RFC determination. On remand, the ALJ shall explain why she disregarded some of the areas of limitation precipitated by Claimant's mental impairments while including others. Alternatively, the ALJ may determine that all the limitations should be included in the RFC and shall modify her RFC assessment accordingly.

Claimant also contends the ALJ failed to include "the physical limitations developed by both medical records and testimony." This argument lacks the specificity to warrant consideration. The ALJ's RFC adequately represented all of Claimant's limitations caused by her severe physical impairments.

### Credibility Analysis

Claimant asserts the ALJ failed to properly consider her allegations of pain and limitation in her credibility assessment. The ALJ found, in typical boiler plate fashion, that

> [a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 52).

The ALJ went on to state that Claimant's thoracic fracture had healed and left no neurological deformities. The ALJ found Claimant abused prescription pain medication by going from doctor to doctor to obtain the medication. Her pain, the ALJ concluded, was found to be "mild" in July of 2007, which did not substantiate her allegations of intense pain." Id.

On July 11, 2007, Claimant was evaluated by Dr. Ronald E.

Woosley.  Dr. Woosley noted Claimant had historically sustained a T12 fracture in 2005.  No surgery was performed and she continued to complain of pain throughout the entire spine from the neck to the sacrum, most prominent in the mid spine.  Claimant also reported a feeling of pain radiating down both legs with numbness and tingling greater on the right than the left.  Her then-present pain was described as an 8 out of 10, with the best at a 4 out of 10, and worst 10 out of 10.  The pain was described as sharp, dull, burning, shock-like, and aching and was constant and worsened with any activity.

A CT scan was reviewed which showed a fracture of the thoracic T12, involving the anterior and middle columns.  A mild protrusion of bone was noted but it did not compromise the canal.  The lumbar area was normal and the fracture did not appear to have worsened since x-rays were taken in 2006.  Although Dr. Woosley did not see any definite instability, he did note a mild kyphotic defect.  He could not determine if this was the source of Claimant's pain. (Tr. 413-14).

On July 29, 2007, Claimant reported to the Sparks Regional Medical Center emergency room.  Claimant presented with back pain and thoracic back pain.  The onset was gradual, lasting 24 months. The pain was characterized as "mild" but "frequent."  (Tr. 607).

The ALJ included some but not all of the information from Dr. Woosley's report in downplaying Claimant's credibility on pain. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy her obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ selectively cited to the portions of Dr. Woosley's report that supported her challenge to Claimant's credibility but not the portions which supported Claimant's pain allegations. Moreover, discounting Claimant's credibility on pain by finding she sought pain medication is a *non sequitur*. On remand, the ALJ shall consider the totality of the applicable medical record in assessing Claimant's credibility and tie that evidence to her ultimate findings.

### Evidence Before the Appeals Council

Claimant contends the Appeals Council should have reviewed and considered Exhibit 33F which she represents contained relevant information on fibromyalgia. Since the case is being remanded for other considerations, the ALJ shall also consider this additional medical evidence in her assessment.

### Conclusion

The decision of the Commissioner is not supported by

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE